Jonathan Stoler
Eric Raphan
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700
Facsimile: (212) 653-8701

12 CIV 1684



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

RAME, LLC d/b/a CAFÉ CENTRO, and PATINA
RESTAURANT GROUP, LLC,

                                Petitioners,

                 v.

MISHI POPOVICH, SANDRA AGUILERA,
BRENDAN CASEY, JOHAN MESTANZA,
DAVID HEWETSON, SAMUEL CUEVAS, and
BONNIE WICKERAAD, on behalf of themselves
and all others similarly situated,

                                Respondents.

-------------------------------------------------------------- x

Civil Action No.:

# PETITIONERS' MEMORANDUM OF LAW IN
## SUPPORT OF THEIR PETITION/MOTION TO VACATE THE
### ARBITRATOR'S PARTIAL FINAL AWARD ON CLAUSE CONSTRUCTION

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................1

STATEMENT OF FACTS .........................................................................3

    A.    The Parties ......................................................................3

    B.    The Hourly Team Member Handbook's Dispute Resolution Policy.......................3

    C.    The Dispute Resolution Agreement .........................................5

    D.    Individual Respondents Read and Understood the DRA and DR Policy ...............5

    E.    Procedural History ...........................................................7

ARGUMENT ........................................................................................7

I.     JURISDICTION AND VENUE ....................................................7

II.    THE STANDARD FOR VACATING AN ARBITRATION AWARD ...........................8

III.   THE ARBITRATOR'S AWARD SHOULD BE VACATED ...............................9

    A.    Supreme Court Precedent And New York Law Hold That The DRA And DR Policy Cannot Be Interpreted To Permit Class/Collective Proceedings .........10

          1.    The Phrase "Any Claim" In The DRA And DR Policy Refers Only To Substantive Claims And Not Matters Of Procedure............................12

          2.    The DRA And DR Policy Provision That The Arbitrator "May Award All Damages And Relief Allowed By Law" Fails To Support Her Award ..................................................15

    B.    The Arbitrator Incorrectly Requires The DRA And DR Policy To Have An Express Waiver of Class/Collective Claims Proceedings................17

    C.    The Potential Costs Of Litigation Do Not Support The Award............................20

    D.    Individual Respondents Are Conclusively Presumed To Understand The Contents Of The DRA And DR Policy And To Have Assented To Them..........22

CONCLUSION.............................................................................24

TABLE OF AUTHORITIES

Page(s)

Cases

187 Concourse Assoc. v. Fishman
   399 F.3d 524 (2d Cir. 2005).................................................................8

Adkins v. Labor Ready, Inc.
   303 F.3d 496 (4th Cir. 2002) ..............................................................16

American Express Co. v. Italian Colors Rest.
   130 S. Ct. 2401, reaff'd 634 F.3d 187 (2d Cir. 2011).........................21

In re American Express Merchants' Litig.
   554 F.3d 300 (2d Cir. 2009)...............................................................21

In re American Express Merchants' Litigation
   667 F.3d 205 (2d Cir. 2012)..........................................................21, 22

Aracri v. Dillard's, Inc.
   No. 1:10cv253, 2011 WL 1388613 (S.D. Ohio Mar. 29, 2011) ..............16

AT&T Mobility LLC v. Concepcion
   131 S. Ct. 1740 (2011)............................................................. passim

Baldeo v. Darden Restaurants, Inc.
   No. 04-cv-2185 (JG), 2005 WL 44703 (E.D.N.Y. Jan. 11, 2005)....................23, 24

In re Baldwin United Corp.
   770 F.2d 328 (2d Cir. 1985)...............................................................13

Barrentine v. Arkansas-Best Freight Sys.
   450 U.S. 728 (1981)...........................................................................15

Blaz v. Belfer
   368 F.3d 501 (5th Cir. 2004) .............................................................13

Brown v. Sears Holding Mgmt. Corp.
   No. 09 C 2203, 2009 WL 2514173 (N.D. Ill. Aug. 17, 2009) ................16

Brown v. St. Paul Travelers Companies, Inc.
   559 F. Supp. 2d 288 (W.D.N.Y. 2008), aff'd, 331 Fed.Appx. 68 (2d Cir. 2009)....................24

Capo v. Bowers
   No. 00 Civ. 5950(JSM), 2001 WL 36193449 (S.D.N.Y. Mar. 12, 2001) ................9

Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.
   489 F.3d 580 (3d Cir. 2007)..............................................................13

Clark v. CHDP Condo, LLC
    AAA No. 11-115-Y-01921-09 (2010) ...................................................................18

CompuCredit Corp. v. Greenwood
    132 S. Ct. 665 (2012) ......................................................................1, 10, 15

Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.
    120 S. Ct. 1331 (2000)...........................................................................8

D'Antuono v. Service Road Corp.
    789 F. Supp. 2d 308 (D. Conn. 2011)................................................16, 21

Daily News, L.P. v. Newspaper & Mail Deliverers' Union of New York and Vicinity
    No. 99 CIV. 5165(TPG), 1999 WL 1095613 (S.D.N.Y. Dec. 2, 1999) ...................8

Dealer Computer Servs, Inc. v. Randall Ford, Inc.
    AAA No. 11-117-Y-002788-06 (2011) ...........................................................18

Delano v. Mastec, Inc.
    No. 8:10-CV-320-T-27MAP, 2010 WL 4809081 (M.D. Fla. Nov. 18, 2010) ..................16, 21

Emergency Physicians of St Clare's, LLC v. ProAssurance Corp.
    AAA No. 11-195-Y-01789-10, at 19-20 (2011) (Chambers, Arb.).....................14, 18

Fahnestock & Co., Inc. v. Waltman
    935 F.2d 512 (2d Cir. 1991).........................................................................9

Gold v. Deutshche Aktiengesellschaft
    365 F.3d 144 (2d Cir 2004)...............................................................23, 24

Gonzalez v. Toscorp Inc.
    No. 97 Civ. 8158 (LAP), 1999 WL 595632 (S.D.N.Y. Aug. 5, 1999) .....................24

Greenfield v. Philles Records
    98 N.Y.2d 562 (N.Y. 2002) .........................................................................11, 18

Halligan v. Piper Jaffray, Inc.
    148 F.3d 197 (2d Cir. 1998)........................................................................8, 9

Hayes v. County Bank
    26 A.D.3d 465 (N.Y. App. Div. 2d Dep't 2006) .............................................11

Henrich v. Phazar Antenna Corp.
    33 A.D.3d 864 (N.Y. App. Div. 2nd Dept. 2006) ...........................................18

Jock v. Sterling Jewelers, Inc.
    646 F.3d 113 (2d Cir. 2011)........................................................................19

Jock v. Sterling Jewelers, Inc.
      725 F. Supp. 2d 444 (S.D.N.Y. 2010)........................................................19

LA Health Serv. Indem. Co. v. DVA Renal Healthcare, Inc.
      AAA No. 11-193-02297-06 (2011) .................................................................18

LaVoice v. UBS Fin. Servs., Inc.
      2012 U.S. Dist. LEXIS 5277 (S.D.N.Y. Jan. 13, 2012)........................16, 17, 21, 22

Maslo v. Oak Pointe Country Club, Inc.
      AAA No. 11-181-02243-06 (2010) (Esshaki, Arb.) ........................................18

McCalley v. NVR, Inc.
      AAA No. 11-110-01323-09 (2011) (Barrett, Arb) ..........................................18

Mensch v. Alta Colls, Inc.
      AAA No. 11-516-00995-09, at p. 32 (2010) (Baker, Arb.) ............................14, 18

N.Y. Tel. Co. v. Comm. Workers of Am. Local 110
      256 F.3d 89 (2d Cir. 2001)...........................................................................9

Nabors v. Peco Foods, Inc.
      AAA Case No. 11-181-2467-08 (2010) (Sneed, Arb.) ....................................18

Nardi v. Povich
      824 N.Y.S.2d 764 (Sup. Ct. NY Co. 2006) ...............................................23, 24

Nissho Iwai Europe v. Korea First Bank
      99 N.Y.2d 115 (N.Y. 2002) ....................................................................11, 18

Pardun v. AT&T Corp.
      AAA Case No. 11-160-01767-07 (2011) (Bissell, Arb.)................................18

Popovich et al. v. RAME, LLC, et al.
      Case No. 11-cv-0680 (LBS) (MHD) ............................................................3

Porzig v. Dresdner, Kleinwort, Benson, North America LLC
      497 F.3d 133 (2d Cir. 2007).......................................................................8

Raniere v. Citigroup Inc.
      No. 11 Civ. 2448, 2011 U.S. Dist. LEXIS 135393 (S.D.N.Y. Nov. 22, 2011) ........17, 22

Spradlin v. Trump Ruffin Tower I, LLC
      AAA No. 11-115-Y-01846-09, at p. 13 (2010) (LaMothe, Arb.).....................13, 18

Stevens & Thompson Paper Co. v. Niagara Mohawk Power Corp.
      49 A.D.3d 1011 (N.Y. App. Div. 3rd Dept. 2008) .......................................11, 18

Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.
    130 S. Ct. 1758 (2010) ........................................................................ *passim*

Sussex v. Turnberry/MGM Grand Towers, LLC
    AAA No. 11-115-01858-09 (2011) (Hare, Arb.) ................................... 18

Sutherland v. Ernst & Young LLP
    No. 10 Civ. 3332, 2012 U.S. Dist. LEXIS 5024 (S.D.N.Y. Jan. 13, 2012) .......................... 22

Todd v. Credit Solutions of Am., Inc.
    AAA No. 11-516-01254-09 (2010) (Mainland, Arb.) ........................... 18

Tsadilas v. Providian National Bank
    13 A.D.3d 190 (N.Y. App. Div. 1st Dep't 2004) ................................. 11

Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Standford Junior Univ.
    489 U.S. 468 (1989) ............................................................................... 8

Winn v. Tenet Healthcare Corp.
    No. 2:10-cv-02140-JPM-cgc, 2011 WL 294407 (W.D. Tenn. Jan. 27, 2011) ................. 16, 21

Wyly v. CA, Inc.
    05CV4430 (TCP)(ETB), 2009 U.S. Dist. LEXIS 90037 (E.D.N.Y. Sept. 2, 2009) .... 10, 11, 18

Statutes

9 U.S.C. § 10 ............................................................................................ 1, 8

9 U.S.C. § 10(a)(4) ...................................................................................... 8

28 U.S.C. § 1331 ......................................................................................... 8

28 U.S.C. § 1391(b) ..................................................................................... 8

Petitioners Rame, LLC d/b/a Café Centro ("Café Centro") and Patina Restaurant Group, LLC ("Patina") (collectively referred to herein as "Petitioners") respectfully submit this memorandum of law in support of their motion ("Motion") to vacate arbitrator Bonnie Weinstock's (the "Arbitrator") Partial Final Award on Clause Construction, dated February 6, 2012 (the "Award"). In her Award, the Arbitrator ruled that the arbitration agreement between Petitioners and respondents Mishi Popovich ("Popovich"), Sandra Aguilera ("Aguilera"), Brendan Casey ("Casey"), Johan Mestanza ("Mestanza"), David Hewetson ("Hewetson"), Samuel Cuevas ("Cuevas") and Bonnie Wickeraad ("Wickeraad") (collectively referred to herein as "Individual Respondents") permit class/collective proceedings in arbitration. Petitioners move to vacate the Award pursuant to 9 U.S.C. § 10.

## PRELIMINARY STATEMENT

The instant arbitration is between an employer and certain of its former employees wherein Individual Respondents have brought wage and hour claims against Petitioners pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") on behalf of themselves and similarly situated current and former employees. It is indisputable that the arbitration agreement between the parties in this case does not make any reference whatsoever to "class" or "collective" actions or to Individual Respondents' ability to pursue claims on behalf of third parties. Moreover, Individual Respondents have admitted that the arbitration agreement is unambiguous and does not "explicitly discuss class actions."

As Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp., 130 S. Ct. 1758, 1775 (2010), AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011) and CompuCredit Corp. v. Greenwood, 132 S. Ct. 665, 669 (2012) make abundantly clear, a party cannot be compelled under the Federal Arbitration Act ("FAA") to arbitrate on a class-wide basis unless there is a

contractual basis for concluding that the party agreed to do so. These cases have further held that the purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms and that a party cannot be forced to participate unwillingly in a class-wide arbitration.

Similarly, New York law requires agreements to be enforced as written and prohibits courts and arbitrators from distorting the meaning of the words used in an agreement to create a new contract that differs from the contract originally agreed to by the parties. Where a contract is silent on a particular term, New York courts have routinely held that such silence serves as evidence that the parties unambiguously agreed not to include such term as part of the contract. New York law strongly cautions courts and arbitrators to refrain from interpreting an agreement as implicitly stating something that the parties neglected to specifically include in the agreement. Thus, where, as here, the parties' arbitration agreement is silent on the issue of class/collective proceedings, the arbitrator must require each individual to arbitrate his/her claims independently.

Notwithstanding this precedent (all of which was submitted to the Arbitrator prior to her issuance of the Award), the clear language of the parties' arbitration agreement, and Individual Respondents' admissions, the Arbitrator issued an Award wherein she incorrectly held that the arbitration agreement permits class/collective proceedings. While the Arbitrator acknowledged the Supreme Court's decision in Stolt-Nielsen, she then improperly attempted to distinguish the instant matter from Stolt-Nielsen on a factual basis and invented a new legal requirement that is not supported by any case law; namely, that Petitioners were required to include an affirmative class-action waiver in their arbitration agreement or otherwise explicitly inform Individual Respondents that they were waiving their ability to proceed in arbitration on a class/collective basis. Stated simply, the Arbitrator's holding runs afoul of Supreme Court precedent and New York contract interpretation principles. By issuing an Award that failed to adhere to these

principles, the Arbitrator clearly exceeded her authority and manifestly disregarded the law.

Therefore, the Award should be vacated.

## STATEMENT OF FACTS

### A.   The Parties

Café Centro is a restaurant located at 200 Park Avenue, New York, New York.  (Specht Decl. ¶ 5; Olivieri Decl. ¶ 5).[1]  Patina is a corporate parent of Café Centro.  (Specht Decl. ¶ 5; Olivieri Decl. ¶ 5).  Individual Respondents are each former Café Centro employees who worked as a waiter, waitress, bartender, food runner and/or busser.  (Compl. ¶¶ 7-10; Specht Decl. ¶¶ 14-15; Stoler Decl., Ex. G).[2]

### B.   The Hourly Team Member Handbook's Dispute Resolution Policy

In November 2007, Café Centro's management distributed a new Hourly Team Member Handbook (the "Handbook") to the hourly team members employed at Café Centro at such time including, but not limited to, its waiters, waitresses, runners, bussers and bartenders (collectively, the "Hourly Team Members").  (Specht Decl. ¶¶ 7, 10; Olivieri Decl. ¶¶ 6-7).  Beginning at that time, Café Centro's management also began providing all newly hired Hourly Team Members with, among other things, a copy of the new version of the Handbook and a copy of a Dispute

---

[1] References to "Specht Decl.," "Suppl. Specht Decl." and "Olivieri Decl." are to the Declaration of David Specht, sworn to on October 26, 2011, the Supplemental Declaration of David Specht, sworn to on December 22, 2011, and the Declaration of Jerome Olivieri, sworn to on May 18, 2011, respectively.  Each of these documents (and their attachments) were provided to the Arbitrator and are attached to the Declaration of Jonathan Stoler, dated March 7, 2012 ("Stoler Decl.") as Exs. D, E and F respectively.

[2] References to "Compl." are to the Complaint filed by Popovich, Aguilera, Casey and Mestanza in Popovich et al. v. RAME, LLC, et al., Case No. 11-cv-0680 (LBS) (MHD), which they initially commenced in the United States District Court for the Southern District of New York (the "Federal Court Action").  As discussed below, Individual Respondents voluntarily withdrew the Federal Court Action and commenced the arbitration. The Complaint also serves as Individual Respondents' Statement of Claim in the arbitration and is attached to the Stoler Decl. as Exhibit B.

Resolution Agreement ("DRA") for their review and execution.  (Specht Decl. ¶ 11; Olivieri Decl. ¶ 8).

In connection with the distribution of the Handbook, in November 2007, Café Centro's management conducted a series of mandatory staff meetings with its Hourly Team Members during which the Handbook was distributed.  (Specht Decl. ¶ 10; Olivieri Decl. ¶ 7).  All Hourly Team Members were required to attend one of these meetings.  (Olivieri Decl. ¶ 7).  Popovich, Casey and Mestanza each were employed as an Hourly Team Member at Café Centro when Café Centro distributed the new version of the Handbook.  (Compl. ¶¶ 7, 9 and 10).  Aguilera, Hewetson, Cuevas, and Wickeraad all began their employment at Café Centro after November 2007 and, thus, were each provided with a copy of the Handbook at or around the time of their hiring.  (Specht Decl. ¶¶ 13-15; Stoler Decl., Ex. G).

The Handbook contains a Dispute Resolution Policy (the "DR Policy"), which provides that all claims relating to an individual hourly employee's employment must be submitted to final and binding arbitration.  (Specht Decl. ¶¶ 8, 9, Ex. A).  More specifically, the DR Policy provides in pertinent part:

> By accepting or continuing your employment with the Company, you will be agreeing that both you and the Company will resolve by mediation and final and binding arbitration any claim that would otherwise be resolved in a court of law. The claims governed by this agreement are those that you or the Company may have relating to your employment with, behavior during, or termination from the Company.  Claims for workers' compensation or unemployment compensation benefits are not subject to this agreement.

(Specht Decl. ¶ 8, Ex. A).  Significantly, the DR Policy is completely devoid of any reference to arbitration on a class-wide or collective basis and does not contain any language authorizing arbitration on a class-wide or collective basis.  (Id.).

**C.**     **The Dispute Resolution Agreement**

As set forth above, beginning in November 2007, Café Centro began providing newly

hired Hourly Team Members with the Handbook and also requested that such individuals

execute a DRA.  (Specht Decl. ¶ 11; Olivieri Decl. ¶¶ 7-8).  Aguilera, Hewetson, Cuevas and

Wickeraad each commenced their employment at Café Centro after November 2007 and, thus,

signed a DRA when they began their employment at Café Centro.  (Specht Decl. ¶¶ 13-15, Exs.

C-E; Stoler Decl., Ex. G).  Similar to the DR Policy, the DRA requires that all claims relating to

an individual's employment be submitted to final and binding arbitration.  (Id.).  Specifically, the

DRA provides in pertinent part that:

> . . . The claims governed by this agreement are those that you or the Company
> may have relating to your employment with, behavior during or termination from,
> the Company. Claims for workers' compensation or unemployment compensation
> benefits are not subject to this agreement.
>
> By accepting or continuing employment with the Company, you and the
> Company both agree to resolve such claims through **final and binding
> arbitration.**   This includes, but is not limited to, claims of employment
> discrimination because of race, sex, religion, national origin, color, age, disability,
> medical condition, marital status, gender identity, sexual preference or any sexual
> harassment and unlawful retaliation; any claims under contract or tort law; any
> claim for wages, compensation or benefits; and any claim for trade secret
> violations, unlawful competition or breach of fiduciary duty.

(Id.).  The DRA also does not authorize arbitration on a class-wide or collective basis and is

devoid of any reference to arbitration on such basis.  (Id.).

**D.**     **Individual Respondents Read and Understood the DRA and DR Policy**

Individual Respondents have repeatedly admitted that they read and understood the DRA

and DR Policy and were encouraged to ask any questions they had regarding such documents.

For example, the DRA clearly states in bold and italics that:

> *Your signature below acknowledges that you have been given sufficient time to
> read & understand this agreement.  Your signature further certifies that you*

*have had the opportunity to consult with legal counsel prior to executing this agreement.*

(Specht Decl. Exs. C-E; Stoler Decl., Ex. G) (emphasis in original).  Similarly, Aguilera,

Hewetson, Cuevas and Wickeraad each signed an Employment Acknowledgement & Agreement

that provides in pertinent part:

> I acknowledge that I have received a copy of the Company's Handbook and understand that it contains important information on the Company's general policies.  I acknowledge that I am expected to read, understand, and adhere to company policies and will familiarize myself with the material in the Handbook.
>
> . . .
>
> Team Member understands and acknowledges that this Agreement is subject to the terms and conditions of the Dispute Resolution provisions contained in the Team Member Handbook and Dispute Resolution Agreement.
>
> . . .
>
> *Your signature below acknowledges that you have been given sufficient time to read and understand this document and that you agree to comply with the standards herein.*

(Suppl. Specht Decl., Exs. B, C and D; Stoler Decl., Ex. G) (emphasis in originals).  In addition,

the Handbook that each of the Individual Respondents received contains the DR Policy and

repeatedly encourages Individual Respondents to ask any questions they have regarding

Petitioners' policies and procedures.  (Suppl. Specht Decl., Ex. A pp. 3, 26).

Finally, both Hewetson and Popovich admitted that, upon their receipt of the DR Policy

and/or DRA, they had a general understanding as to the purpose of these documents and asked

certain questions regarding the same.  (Hewetson Decl. ¶¶ 4-9; Popovich Decl. ¶¶ 8-9, 12-13).[3]

---

[3] References to "Hewetson Decl." and "Popovich Decl." are to the Declaration of David Hewetson, sworn to on November 17, 2011 and to the Declaration of Mishi Popovich, sworn to on November 17, 2011, both of which were submitted to the Arbitrator and are attached to the Stoler Decl. as Exhibits H and I.

None of the Individual Respondents allege that they ever bothered to ask whether the DRA and DR Policy permit class/collective proceedings.

## E.   Procedural History

On or about January 31, 2011, Popovich, Aguilera, Casey and Mestanza collectively commenced the Federal Court Action by filing the Complaint against Petitioners on behalf of themselves and all similarly situated individuals wherein they alleged the following claims: (1) failure to pay overtime in violation of the FLSA and NYLL; (2) failure to provide spread of hours pay in violation of the NYLL and the New York Code of Rules and Regulations; and (3) unlawful retention of service charges in violation of the NYLL. [4]

On or about May 20, 2011, Respondents filed a motion to dismiss the Federal Court Action and to compel Popovich, Aguilera, Casey and Mestanza to arbitrate their claims on an individual basis (the "Motion to Dismiss"). On or about July 2, 2011, Popovich, Aguilera, Casey and Mestanza voluntarily dismissed their Complaint and commenced an arbitration. Pursuant to the parties' Joint Stipulation (the "Stipulation"), dated September 23, 2011, the parties selected the Arbitrator and agreed to engage in motion practice to obtain a threshold clause construction award regarding whether the DR Policy and/or DRA permit class/collective proceedings. (Stoler Decl., Ex. C). On or about February 6, 2012, the Arbitrator issued her Award and stayed the arbitration pending the outcome of this motion and related proceedings. (Stoler Decl., Ex. A).

## ARGUMENT

## I.   JURISDICTION AND VENUE

Pursuant to the Stipulation, either party may pursue any and all remedies, including a motion to vacate the Award, in the Southern District of New York. (Stoler Decl. C). Moreover,

---

[4] Hewetson, Cuevas and Wickeraad joined the instant action at various times thereafter.

because the DRA and DR Policy were executed and distributed in the Southern District and the facts giving rise to Individual Respondents' purported claims occurred in the Southern District, jurisdiction and venue are appropriate in this Court. Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co., 120 S. Ct. 1331, 1339 (2000); 28 U.S.C. §§ 1331, 1391(b); 9 U.S.C. § 10.

## II.   THE STANDARD FOR VACATING AN ARBITRATION AWARD

The FAA requires arbitrators to "rigorously enforce" arbitration agreements and to give "effect to the contractual rights and expectations of the parties." Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Standford Junior Univ., 489 U.S. 468, 479 (1989). In light of this policy, section 10 of the FAA provides that a Court may vacate an arbitrator's award where, among other reasons, "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

When considering a challenge under section 10(a)(4), the Court must determine whether the arbitrator exceeded the scope of his/her powers under the arbitration agreement. See 187 Concourse Assoc. v. Fishman, 399 F.3d 524, 527 (2d Cir. 2005). "Where the arbitrator goes beyond th[e] self-limiting agreement between consenting parties, it acts inherently without power, and an award ordered under such circumstances must be vacated." Porzig v. Dresdner, Kleinwort, Benson, North America LLC, 497 F.3d 133, 140 (2d Cir. 2007); see also Daily News, L.P. v. Newspaper & Mail Deliverers' Union of New York and Vicinity, No. 99 CIV. 5165(TPG), 1999 WL 1095613, at *7 (S.D.N.Y. Dec. 2, 1999) (citations omitted).

Courts in the Second Circuit have also found that an arbitrator's award may be vacated when the arbitrator manifestly disregards the law. See Halligan v. Piper Jaffray, Inc., 148 F.3d 197, 202 (2d Cir. 1998). To vacate an arbitration award because the arbitrator manifestly disregarded the law, the movant must show that: "(1) the arbitrator knew of a governing legal principle yet refused to apply it or ignored it altogether; and (2) the law ignored by the arbitrator

was well defined, explicit, and clearly applicable to the case." Halligan, 148 F.3d at 202; see also N.Y. Tel. Co. v. Comm. Workers of Am. Local 110, 256 F.3d 89, 91 (2d Cir. 2001); Capo v. Bowers, No. 00 Civ. 5950(JSM), 2001 WL 36193449, at *4 (S.D.N.Y. Mar. 12, 2001).  Courts in this district have found that an arbitrator manifestly disregards the law where the arbitrator exceeds her legal powers in rendering the decision.  See N.Y. Tel. Co., 256 F.3d at 93; Fahnestock & Co., Inc. v. Waltman, 935 F.2d 512, 519 (2d Cir. 1991).  As discussed below, the Award should be vacated because the Arbitrator exceeded her powers and manifestly disregarded the law.

**III.    THE ARBITRATOR'S AWARD SHOULD BE VACATED**

The Arbitrator's Award should be vacated because she exceeded her powers under the parties' DRA and DR Policy and manifestly disregarded applicable law.  More specifically, the Award fails to adhere to well-settled Supreme Court precedent and basic New York contract interpretation principles all of which clearly provide that neither the DRA nor the DR Policy give the Arbitrator the authority to preside over class/collective claims.  Instead, the Award ignores this precedent (or improperly distinguishes the same), espouses a tortured reading of the DRA and DR Policy and essentially creates a new requirement that is not supported by any case law; namely, that employers must include an affirmative class-action waiver in their arbitration agreements in order for employees to be deemed to have waived their ability to proceed on a class/collective basis.  Stated another way, the Arbitrator improperly placed a duty on Petitioners to affirmatively disclose to Individual Respondents that the DRA and DR Policy contained a waiver of class/collective proceedings where no such duty is required by law and indeed runs afoul of Supreme Court precedent.

**A.    Supreme Court Precedent And New York Law Hold That The DRA And DR Policy Cannot Be Interpreted To Permit Class/Collective Proceedings**

The United States Supreme Court has issued several recent decisions all of which hold

that the FAA requires arbitration agreements to be enforced according to their terms.  See Stolt-

Nielsen, 130 S. Ct. at 1775; Concepcion, 131 S. Ct. at 1745 and Greenwood, 132 S. Ct. at 669.

Moreover, "a party may not be compelled under the FAA to submit to class arbitration unless

there is a contractual basis for concluding that the party *agreed* to do so." Stolt-Nielsen, 130 S.

Ct. at 1775 (emphasis in original).  The Supreme Court has repeatedly explained that a party

cannot be forced to unwittingly participate in a class-wide arbitration because of the fundamental

differences between individual arbitration and class-wide arbitration.  Stolt-Nielsen, 130 S. Ct. at

1776; Concepcion, 131 S. Ct. at 1751.[5]  Based upon these principles, the Supreme Court in Stolt-

Nielsen rejected an arbitration panel's presumption that "the parties' mere silence on the issue of

class-action arbitration constitutes consent to resolve their disputes in class proceedings." Id. at

1776.

Similarly, it is well settled in New York that agreements must be enforced as written.

Specifically, "[w]hen interpreting contracts, New York courts adhere to 'the familiar and

eminently sensible proposition of law [] that, when parties set down their agreement in a clear,

complete document, their writing should . . . be enforced according to its terms.'" Wyly v. CA,

Inc., 05 CV 4430 (TCP) (ETB), 2009 U.S. Dist. LEXIS 90037, at *24 (E.D.N.Y. Sept. 2, 2009)

(quoting Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co., 1 N.Y.3d 470, 475 (2004)).

---

[5] Such fundamental differences include, but are not limited to: (1) "[c]lass arbitration greatly increases risks to
defendants . . . and [a]rbitration is poorly suited to the higher stakes of class action," Concepcion, 131 S. Ct. at
1751; (2) "[t]he arbitrator's award [in a class arbitration] no longer purports to bind just the parties to a single
arbitration agreement, but adjudicates the rights of absent parties as well;" and (3) "the commercial stakes of class-
action arbitration are comparable to those of class-action litigation, even though the scope of judicial review is much
more limited." Stolt-Nielsen, 130 S. Ct. at 1776.

Courts and arbitrators are not permitted "under the guise of interpreting the writing" to "add or excise" terms to a contract and also are not permitted to "distort the meaning of those [words] used," to create a new contract that differs from the contract originally intended by the parties. Id. at *25 (quoting Vermont Teddy Bear Co., Inc., 1 N.Y.3d at 475). Moreover, where a contract is silent on a particular term, New York courts have routinely held that such silence serves as evidence that the parties unambiguously agreed not to include such term as part of the contract. See Id. at *26 (citations omitted); Nissho Iwai Europe v. Korea First Bank, 99 N.Y.2d 115, 122 (N.Y. 2002); Greenfield v. Philles Records,  98 N.Y.2d 562, 573 (N.Y. 2002); Stevens & Thompson Paper Co. v. Niagara Mohawk Power Corp., 49 A.D.3d 1011, 1013 (N.Y. App. Div. 3rd Dept. 2008).  Accordingly, under New York law, "[c]ourts [and arbitrators, as applicable] should be *extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include.*" Wyly, 2009 U.S. Dist. LEXIS 90037, at *24 (quoting Vermont Teddy Bear Co., Inc., 1 N.Y.3d at 475) (emphasis added).  New York courts have not hesitated to apply these basic principles and enforce arbitration clauses even when doing so precluded the plaintiffs from proceeding on a class-wide basis. See Hayes v. County Bank, 26 A.D.3d 465, 467 (N.Y. App. Div. 2d Dep't 2006); Tsadilas v. Providian National Bank, 13 A.D.3d 190, 191 (N.Y. App. Div. 1st Dep't 2004).

It is undisputable that neither the DRA nor the DR Policy make any reference whatsoever to "class" or "collective" actions or to Individual Respondents' ability to pursue claims on behalf of third parties.  Moreover, when briefing this issue before the Arbitrator, Individual Respondents admitted that the DRA and DR Policy were unambiguous and that neither document "explicitly discuss class actions."  In light of these facts and the above-referenced precedent, it is clear that the Arbitrator erred by refusing to compel Individual Respondents to

proceed in arbitration on an individual basis because there was no agreement to arbitrate on a class/collective basis.

### 1.   The Phrase "Any Claim" In The DRA And DR Policy Refers Only To Substantive Claims And Not Matters Of Procedure

In support of her Award, the Arbitrator states that she "finds it to be significant" that the DRA and DR Policy cover "any claim that, in the absence of this Agreement would be resolved in a court of law under applicable state or federal law." (Award p. 8). However, the Arbitrator's reliance on this language is misplaced because, when read within the context of the DRA and DR Policy, the phrase "any claim" clearly refers to substantive claims and not matters of procedure such as whether Individual Respondents can proceed on a class/collective basis.

Significantly, the Arbitrator's reasoning impermissibly disregards the Supreme Court's holding in Stolt-Nielsen. Similar to the DRA and DR Policy, the arbitration clause in Stolt-Nielsen included "[a]ny dispute arising from making, performance or termination" of the relationship. 130 S. Ct. at 1765. Based upon that contractual language, the respondents argued that the arbitration provision was broad enough to provide for class-wide arbitration. However, the Supreme Court disagreed and clearly noted that a broad arbitration agreement such as one

that covers "any dispute" refers to substantive claims and has no bearing whatsoever on whether the parties agreed to proceed on a *procedural* basis as a class-wide arbitration.  Id.[6]

The distinction the Supreme Court made between substantive claims and procedural methods as articulated in Stolt-Nielsen, is consistent with a long line of cases that hold that an arbitration provision, such as the one at issue in this case, relates to substantive claims only and not to the procedural posture through which such claims are to be litigated.  See In re Baldwin United Corp., 770 F.2d 328, 335 (2d Cir. 1985) (stating that class action procedures do not give rise to substantive claims or remedies); Blaz v. Belfer, 368 F.3d 501, 504 (5th Cir. 2004) (recognizing that a class action "is merely a procedural device. . . .") (citations omitted); Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co., 489 F.3d 580, 588 (3d Cir. 2007) (the determination of whether the parties agreed to consolidated arbitration proceedings is a matter of procedure).

Indeed, numerous arbitrators who have considered this issue following Stolt-Nielsen have similarly noted the distinction between substantive claims and the procedural methods through which such claims can be brought.  See Spradlin v. Trump Ruffin Tower I, LLC, AAA No. 11-115-Y-01846-09, at p. 13 (2010) (LaMothe, Arb.) ("The Court in "Stolt-Nielsen noted that this

---

[6] The Arbitrator attempts to distinguish the instant matter from Stolt-Nielsen on two primary factual grounds: (1) she notes that the parties in Stolt-Nielsen agreed that the arbitration agreement at issue was silent on whether it permitted class actions; and (2) the difference between Individual Respondents' sophistication and that of the parties in Stolt-Nielsen. (Award pp. 12-13).  These factual distinctions are completely unavailing.  First, as set forth above, both the DRA and DR Policy are indisputably "silent" as to "class" or "collective" actions and make no reference whatsoever to Individual Respondents' ability to pursue claims on behalf of third parties.  Indeed, Individual Respondents admit that these documents are unambiguous and to not "explicitly discuss class actions."  Moreover, as set forth herein, New York law prohibits the Arbitrator from interpreting an agreement as implicitly stating something that the parties neglected to specifically include in the agreement.  Accordingly, the fact that the parties in Stolt-Nielsen agreed that the arbitration agreement was silent on class actions is wholly irrelevant.  Equally irrelevant is the sophistication of the parties.  As the DRA and Employment Acknowledgement & Agreement make clear, Individual Respondents were given sufficient time to review the DRA and DR Policy and were given the opportunity to consult counsel prior to assenting to the same.  (See Specht Decl. ¶¶ 13-15, Exs. C-E; Stoler Decl., Ex. G).  Thus, from a sophistication perspective, Individual Respondents are no different than the parties in Stolt-Nielsen.

type of broad language refers to substantive claims and can't substitute for the necessary intent to permit the inclusion of non-signatories to the arbitration."); see also Emergency Physicians of St Clare's, LLC v. ProAssurance Corp., AAA No. 11-195-Y-01789-10, at 19-20 (2011) (Chambers, Arb.); Mensch v. Alta Colls, Inc., AAA No. 11-516-00995-09, at p. 32 (2010) (Baker, Arb.).

Furthermore, when read within the context of the document, it is evident from the plain language of the DRA and DR Policy that the phrase "any claim" clearly refers to *substantive* claims only. More specifically, the DRA states:

> By accepting or continuing employment with the Company, you agree and understand that both you and the Company mutually agree to resolve and binding arbitration any claim that, in the absence of this Agreement, would be resolved in a court of law under applicable state or federal law. This includes, but is not limited to, claims of employment discrimination because of race, sex, religion, national origin, color, age, disability, medical condition, marital status, gender, identity, sexual preference or any other characteristic protected by applicable law. It also includes any claim you might have for unlawful harassment including sexual harassment and unlawful retaliation; any claims under contract or tort law; any claim for wages, compensation or benefits; and any claim for trade secret violations, unlawful competition or breach of fiduciary duty.

(Specht Decl. Exs. C-E; Stoler Decl. Ex. G). Similarly, the DR Policy limits the claims that may be brought to those "relating to your employment with, behavior during, or termination from the Company." (Specht Decl. Ex. A). Unlike the substantive claims specifically addressed in the above-quoted language, neither the DRA nor the DR Policy actually discuss class/collective procedures or any other procedural aspects such as pleading rules or rules of evidence. (Specht Decl. Exs. A, C-E; Stoler Decl. Ex. G).[7]

---

[7] In the Award, the Arbitrator disregards this crucial difference between substantive and procedural claims by arguing that, although the DRA and DR Policy do not specifically reference statutes of limitations, for example, Petitioners would not be precluded from raising such procedural issue as an affirmative defense. (Award p. 24). The Arbitrator's reasoning completely misses the point. Clearly, there are certain rights and procedures, such as statutes of limitations, that a party cannot waive. However, the right to proceed on a class/collective basis is not a statutory "right" and, as repeatedly discussed herein, can be waived – as individual respondents have done here as a matter of law.

Indeed, the fact that both the DRA and DR Policy expressly limit the claims that

Individual Respondents may bring to claims that "*you* or the Company may have relating to *your*

employment with, behavior during, or termination from the Company" further establishes that

the DRA and DR Policy permit employees to bring their own individual claims and not

class/collective proceedings.  (Specht Decl., Exs. A, C-E; Stoler Decl. Ex. G).  Accordingly,

when read in their entirety, the only claims that the parties agreed to submit to arbitration were

individual claims and neither the DRA nor the DR Policy contain an agreement to submit class

or collective claims to arbitration.

2.   **The DRA And DR Policy Provision That**
     **The Arbitrator "May Award All Damages And**
     **Relief Allowed By Law" Fails To Support Her Award**

The Arbitrator further relies on the fact that the DRA and DR Policy state that the

Arbitrator "may award all damages and relief allowed by law" and incorrectly reasons that

Individual Respondents have a "statutory right" to seek "relief" on a class or collective basis

under the NYLL and FLSA.  (Award pp. 13-14, 18-19).  As the Supreme Court made clear in

Greenwood, an arbitration agreement must be enforced according to its terms "even when the

claims at issue are federal statutory claims, unless the FAA's mandate has been '*overridden by a*

*contrary congressional command.*'"  Greenwood, 132 S. Ct. at 669 (emphasis added).  Neither

the FLSA nor the NYLL are subject to a specific congressional directive requiring that

Individual Respondents be permitted to proceed in arbitration on a class/collective basis.

The Supreme Court has held that the FLSA provides employees with the substantive right

to recover overtime, wages, and liquidated damages.  See Barrentine v. Arkansas-Best Freight

Sys., 450 U.S. 728, 740 (1981).  However, while the Arbitrator argues that both the FLSA and

NYLL "*contemplate* collective actions and class actions," (Award p. 9) (emphasis added) courts

in the Second Circuit and elsewhere have held that this fact alone does not, in and of itself, create

a statutory "right" for Individual Respondents to pursue FLSA and NYLL claims on behalf of others on a class/collective basis.  See LaVoice v. UBS Fin. Servs., Inc., 11 Civ. 2308 (BSJ)(JLC), 2012 U.S. Dist. LEXIS 5277, *19-20 (S.D.N.Y. January 13, 2012) (citing Concepcion, 113 S. Ct. at 1748); see also D'Antuono v. Service Road Corp., 789 F. Supp. 2d 308, 344 (D. Conn. 2011); Winn v. Tenet Healthcare Corp., No. 2:10-cv-02140-JPM-cgc, 2011 WL 294407, at *10 (W.D. Tenn. Jan. 27, 2011) (quoting Brown v. Sears Holding Mgmt. Corp., No. 09 C 2203, 2009 WL 2514173, at *3 (N.D. Ill. Aug. 17, 2009)); Aracri v. Dillard's, Inc., No. 1:10cv253, 2011 WL 1388613, at *5 (S.D. Ohio Mar. 29, 2011); Delano v. Mastec, Inc., No. 8:10-CV-320-T-27MAP, 2010 WL 4809081, at *7 (M.D. Fla. Nov. 18, 2010); Brown, 2009 WL 2514173, at *4; Adkins v. Labor Ready, Inc., 303 F.3d 496, 503 (4th Cir. 2002).

The argument that a plaintiff has a statutory right to proceed on a class/collective basis under the FLSA was most recently rejected by the Southern District in LaVoice.  In LaVoice, the plaintiff commenced a class and collective action in the Southern District of New York alleging that UBS had violated the FLSA and the NYLL.  Id. at *3-8.  UBS filed a motion to compel arbitration on the grounds that the plaintiff was a party to an arbitration agreement with UBS pursuant to which he agreed to individually arbitrate his FLSA and NYLL claims.  Id. at *3-8.  Like Individual Respondents here, the plaintiff countered that the right to proceed on a collective basis under the FLSA is a federal statutory right that cannot be waived and, thus, the parties' arbitration agreement was unenforceable.  Id. at *18-20.  The Court rejected the plaintiff's argument as being precluded by the Supreme Court's decision in Concepcion.  Id. at *19-20.  More specifically, the Southern District stated:

> In his opposition, LaVoice makes the argument that the "FLSA cannot be gutted by the FAA."  This argument effectively suggests that the FLSA "guarantees the right to . . . collective action" which cannot be "lawfully waived in a non-negotiated arbitration agreement, or at all."  *The Court finds this argument, which*

> *assumes that a collective action requirement can be consistent with the FAA,*
> *precluded in light of the Supreme Court's decision in AT&T Mobility. Given that*
> *the Supreme Court held in AT&T Mobility that "[r]equiring the availability of*
> *classwide arbitration interferes with fundamental attributes of arbitration and*
> *thus creates a scheme inconsistent with the FAA," this Court must read AT&T*
> *Mobility as standing against any argument that an absolute right to collective*
> *action is consistent with the FAA's "overarching purpose" of "ensur[ing] the*
> *enforcement of arbitration agreements according to their terms so as to facilitate*
> *streamlined proceedings.* To the extent that LaVoice relies on the decision in
> Raniere, et al. v. Citigroup, Inc. . . . or the recent decision of the National Labor
> Relations Board in D.R.Horton, Inc. and Michael Cuda, . . . as authority to
> support a conflicting reading of AT&T Mobility, *this court declines to follow*
> *these decisions.*

Id. at *19-20 (citing Concepcion, 113 S. Ct. at 1748) (emphasis added).[8]

In sum, the Award simply ignores the fact that the DRA and DR Policy do not contain

any language providing for class/collective proceedings and, instead, sets forth an incorrect

interpretation of the documents in an effort to insert an implied agreement by the parties to

arbitrate on a class/collective basis. By doing so, the Arbitrator exceeded her powers under the

DRA and DR Policy and manifestly disregarded Supreme Court precedent, Second Circuit

precedent and New York contract interpretation principles.

**B.      The Arbitrator Incorrectly Requires The DRA And DR Policy**
**To Have An Express Waiver of Class/Collective Claims Proceedings**

The Arbitrator further incorrectly reasons that her Award is supported by the fact that

"[t]he DR Policy and DRA do not expressly preclude class or collective actions." (Award p. 10).

Indeed, the Arbitrator repeatedly reiterates this distinction between the instant matter and other

cases throughout the Award. (Award pp. 9-10, 20-21). However, this purported distinction is

---

[8] The Arbitrator also relied upon Raniere v. Citigroup Inc., No. 11 Civ. 2448, 2011 U.S. Dist. LEXIS 135393 (S.D.N.Y. Nov. 22, 2011) wherein the Court held that the FLSA guarantees a plaintiff the right to proceed on a collective basis. However, Raniere fails to support the Award for at least two reasons. First, in LaVoice, which was issued shortly after Raniere, the Southern District expressly declined to follow Raniere. See LaVoice, 2012 U.S. Dist. LEXIS 5277, at *19-20. Second, the court in Raniere conceded that the Second Circuit has yet to determine whether an employee's waiver of his/her ability to proceed on a collective basis under the FLSA is enforceable. Raniere, 2011 U.S. Dist. LEXIS 135393, at *37.

irrelevant to the analysis.  As <u>Stolt-Nielsen</u>, New York law and numerous arbitration awards

issued post-<u>Stolt-Nielsen</u> make clear, Petitioners were not required to include an express

prohibition of class/collective actions in the DRA or DR Policy.  Rather, the fact that the DRA

and DR Policy are silent on such issue is more than sufficient to establish, as a matter of law, that

the Arbitrator does not have the authority to hear class/collective claims.  <u>Stolt-Nielsen</u>, 130 S.

Ct. at 1776; <u>Wyly</u>, 2009 U.S. Dist. LEXIS 90037, at *26; <u>Henrich v. Phazar Antenna Corp.</u>, 33

A.D.3d 864, 867 (N.Y. App. Div. 2nd Dept. 2006); <u>Nissho Iwai Europe</u>, 99 N.Y.2d at 121-122;

<u>Greenfield</u>, 98 N.Y.2d at 573; <u>Stevens</u>, 49 A.D.3d at 1013-15.[9]  In fact, many arbitrators who had

previously held that the parties could proceed on a class-wide basis because the arbitration

agreement did not expressly prohibit class-wide arbitration subsequently vacated their own

awards following the Supreme Court's decision in <u>Stolt-Nielsen</u> and required the claimants to

individually arbitrate their claims.  <u>See Dealer Computer Servs.</u>, AAA No. 11-117-Y-002788-06;

<u>Pardun</u>, AAA Case No. 11-160-01767-07; <u>Maslo</u>, AAA No. 11-181-02243-06.

By requiring Petitioners to include an express prohibition on class/collective proceedings,

the Arbitrator ignores a plethora of precedent, including <u>Stolt-Nielsen</u>, that makes it abundantly

clear that Petitioners are not required to have such an express prohibition in the DRA or DR

Policy and incorrectly applied a heightened standard to the DRA and DR Policy.  Indeed, rather

than require an express waiver of class/collective proceedings, the proper reading of the above-

---

[9] <u>See also</u> <u>Spradlin</u>, AAA No. 11-115-Y-01846-09; <u>Emergency Physicians of St Clare's</u>, AAA No. 11-195-Y-01789-10; <u>Todd v. Credit Solutions of Am., Inc.</u>, AAA No. 11-516-01254-09 (2010) (Mainland, Arb.); <u>Mensch</u>, AAA No. 11-516-00995-09; <u>Dealer Computer Servs, Inc. v. Randall Ford, Inc.</u>, AAA No. 11-117-Y-002788-06 (2011) (Widman, Silverman, & Marshall, Arbs.); <u>Pardun v. AT&T Corp.</u>, AAA Case No. 11-160-01767-07 (2011) (Bissell, Arb.); <u>Maslo v. Oak Pointe Country Club, Inc.</u>, AAA No. 11-181-02243-06 (2010) (Esshaki, Arb.); <u>Clark v. CHDP Condo, LLC</u>, AAA No. 11-115-Y-01921-09 (2010) (Dreier, Harr, & Hendrick, Arbs.); <u>LA Health Serv. Indem. Co. v. DVA Renal Healthcare, Inc.</u>, AAA No. 11-193-02297-06 (2011) (Frank, Jr. & Perry, Jr., Arbs.); <u>McCalley v. NVR, Inc.</u>, AAA No. 11-110-01323-09 (2011) (Barrett, Arb); <u>Sussex v. Turnberry/MGM Grand Towers, LLC</u>, AAA No. 11-115-01858-09 (2011) (Hare, Arb.); <u>Nabors v. Peco Foods, Inc.</u>, AAA Case No. 11-181-2467-08 (2010) (Sneed, Arb.).

referenced case law mandates that the DRA and DR Policy must be read to prohibit class/collective proceedings unless they *explicitly* provide for such proceedings.

In support of her Award, the Arbitrator relied heavily on the Second Circuit's decision in Jock v. Sterling Jewelers, Inc., 646 F.3d 113 (2d Cir. 2011) and stated that such decision was "compelling as a post-Stolt-Nielsen analysis of how the Second Circuit views the cases of class action arbitration." (Award p. 16). Significantly, however, Jock provides no such analysis. In Jock, the arbitrator – who rendered her decision *before* the Supreme Court's decision in Stolt-Nielsen and applied *Ohio law* to the agreement at issue – held that the named plaintiffs could proceed in arbitration on a class-wide basis even though the arbitration agreement contained "no mention of class claims."[10] Jock, 646 F.3d at 117. Four months after the Supreme Court issued its decision in Stolt-Nielsen, the Southern District ruled that, if jurisdiction were restored to it, it would vacate the arbitrator's award in light of Stolt-Nielsen. Jock v. Sterling Jewelers, Inc., 725 F. Supp. 2d 444, 450 (S.D.N.Y. 2010).

On July 1, 2011, the Second Circuit reversed the Southern District's decision. Significantly, however, the Second Circuit did not focus on the underlying legal issue of whether a party can be compelled to arbitrate on a class-wide basis when the arbitration agreement is silent on such issue. Rather, the court made clear that "the primary thrust of [its] decision is whether the district court applied the appropriate level of deference when reviewing the arbitration award." Jock, 646 F.3d at 124. The court further noted that the arbitrator was obligated to make her decision based upon the law "as it existed at the time of her decision" and

---

[10] As the arbitrator explained in her decision, Ohio law "will not insert by construction for the benefit of one of the parties an exception or condition which the parties either by design or neglect have omitted from their own contract." Jock, 646 F.3d at 117. Accordingly, she concluded that to read a prohibition on class arbitration into the terms of the agreement "would impermissibly insert a term for the benefit of one of the parties that it has chosen to omit from its own contract." Id.

that an intervening change of law – the Supreme Court's decision in <u>Stolt-Neilson</u> – does not provide a court with grounds to vacate an arbitrator's decision that was issued prior to such intervening change of law. <u>Id.</u> at 125. In the instant matter, the Arbitrator's Award was issued after the Supreme Court's decisions in <u>Stolt-Nielsen</u>, <u>Concepcion</u> and <u>Greenwood</u> and, thus, the Arbitrator is required to follow such precedent as well as New York contract interpretation principles.

The Arbitrator also notes that the Second Circuit made it clear in <u>Jock</u> that "state law may be used to help determine whether the parties to an arbitration agreement had an implicit agreement to permit class arbitration." (Award p. 16). Inexplicably, however, the Arbitrator then ignored New York contract interpretation principles when interpreting the DRA and DR Policy. As set forth above, unlike Ohio law, New York law makes it clear that courts and arbitrators must interpret agreements as written and should be extremely reluctant to interpret an agreement to impliedly state something that the parties have neglected to specifically include. The Arbitrator failed to adhere to these principles when issuing her Award, thereby exceeding her authority and disregarding applicable law.

### C.    The Potential Costs Of Litigation Do Not Support The Award

The Arbitrator next asserts in the Award that Individual Respondents should be permitted to proceed on a class/collective basis because it would be too expensive for Individual Respondents to pursue their claims individually. (Award pp. 17-20). This reasoning has been soundly rejected by multiple courts in the Second Circuit as well as numerous other courts. Pursuant to the DRA and DR Policy, all of the individual remedies available under the FLSA and NYLL including the award of attorneys' fees and costs will be available to Individual Respondents if they individually proceed in arbitration and are ultimately successful. Accordingly, as numerous courts have noted, Individual Respondents are neither prevented from

obtaining competent legal representation nor disincentivized from pursuing their claims on an individual basis. See LaVoice, 2012 U.S. Dist. LEXIS 5277, at *21-22 (S.D.N.Y. January 13, 2012) (rejecting plaintiff's argument that he would be disinclined to pursue his claims individually due to the cost because the plaintiff, if successful, would be entitled to recover attorneys' fees and costs); see also D'Antuono, 789 F. Supp. 2d at 343; Winn, 2011 WL 294407, at *10; Delano, 2010 WL 4809081, at *5.

In an effort to support this aspect of her Award, the Arbitrator incorrectly relies on In re American Express Merchants' Litig., 554 F.3d 300 (2d Cir. 2009), American Express Co. v. Italian Colors Rest., 130 S. Ct. 2401, reaff'd 634 F.3d 187 (2d Cir. 2011) and In re American Express Merchants' Litigation, 667 F.3d 205 (2d Cir. 2012) (collectively, the "AMEX Cases"). However, these cases are wholly distinguishable from the instant matter.

In the AMEX Cases, the plaintiffs (who were pursuing antitrust claims under the Sherman Act) submitted a detailed affidavit from an economist who testified: (1) it would cost each individual plaintiff between several hundred thousand dollars to over one million dollars to obtain the necessary economic antitrust study to pursue their claims; and (2) it would be economically irrational for the plaintiffs to individually pursue their claims in light of the out-of-pocket costs that the plaintiffs would incur. In re American Express Merchants' Litigation, 667 F.3d at 212. Based upon this evidence, the Second Circuit concluded that requiring the plaintiffs to arbitrate their claims individually would effectively preclude them from pursuing their claims. Id. at 218. Significantly, in reaching its decision, the Second Circuit clearly noted that "when a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." Id. at 210 (internal citations omitted).

Unlike the plaintiffs in the AMEX Cases, Individual Respondents have utterly failed to satisfy their burden.  Rather, the only "evidence" that Individual Respondents submitted in support of their argument that proceeding in arbitration on an individual basis would be cost prohibitive are bald, unsupported statements in the declarations of Popovich and Hewetson that they would be disinclined to pursue their claims if they were required to individually arbitrate the same. (Stoler Decl., Exs. H and I).  These statements are nothing more than self-serving, irrelevant statements that fall far short of satisfying their onerous burden.  The Southern District flatly rejected similar unsupported allegations by the plaintiffs in LaVoice.  See LaVoice, 2012 U.S. Dist. LEXIS 5277, at *21-23. [11]

### D.    Individual Respondents Are Conclusively Presumed To Understand The Contents Of The DRA And DR Policy And To Have Assented To Them

Finally, the Arbitrator asserts that Individual Respondents should be permitted to proceed on a class/collective basis because they were not advised that their claims must be arbitrated on an individual basis.  (Award pp. 9, 21, 27).  This argument also fails to support the Award.

Pursuant to the basic tenets of New York contract law, in the absence of fraud or another wrongful act on the part of the other party, "a party who signs or accepts a written contract is conclusively presumed to know its contents and to assent to them."  Baldeo v. Darden Restaurants, Inc., No. 04-cv-2185 (JG), 2005 WL 44703, at *4 (E.D.N.Y. Jan. 11, 2005); see

---

[11] The Arbitrator also relies on Raniere and Sutherland v. Ernst & Young LLP, No. 10 Civ. 3332, 2012 U.S. Dist. LEXIS 5024 (S.D.N.Y. Jan. 13, 2012) in further support of her argument.  However, both of these cases are clearly distinguishable from the instant matter.  In Raniere, the plaintiffs submitted detailed evidence and testimony to support their claim that if they were forced to arbitrate their claims individually, their costs, including attorneys' fees and expert fees would total approximately $640,000.  Raniere, 2011 WL 5881926, at *49.  The plaintiffs submitted further evidence estimating the damages of at least one plaintiff to amount to only $57,900.  Id. at *51.  Similarly, in Sutherland, the plaintiff represented to the court that her compensatory damages amounted to $1,867.02. Sutherland, 2012 U.S. Dist. LEXIS 5024, at *2.  Individual Respondents failed to provide the Arbitrator with any such similar evidence.

/* omitted */

also Gold v. Deutshche Aktiengesellschaft, 365 F.3d 144, 149 (2d Cir 2004); Nardi v. Povich,

824 N.Y.S.2d 764 (Sup. Ct. NY Co. 2006).  Stated another way, contrary to the Arbitrator's

reasoning in the Award, Petitioners were not required under New York law to specifically inform

Individual Respondents that the DRA and DR Policy prohibited class/collective proceedings.

The Arbitrator's holding also contradicts Stolt-Nielsen.  As set forth above, the plain language of

the DRA and DR Policy make it clear that Individual Respondents are only permitted to bring

claims on an individual basis.   Moreover, New York law provides that to the extent that any of

the Individual Respondents had questions or concerns regarding the terms of the DRA or DR

Policy, the "burden was upon [them] to have [their] concerns addressed" before signing the DRA

or continuing to work for Petitioners after their receipt of the DR Policy.  Gold, 365 F.3d at 149

(stating that burden was on employee to seek clarification of arbitration agreement before

signing the same); see also Baldeo, 2005 WL 44703, at *4-5; Nardi, 824 N.Y.S.2d 764.

    In the record before the Arbitrator, Hewetson and Popovich collectively admitted that

they reviewed the DRA and DR Policy, generally understood them and asked certain questions

regarding them.  (Hewetson Decl. ¶¶ 4-9; Popovich Decl. ¶¶ 8-9, 12-13).  Individual

Respondents repeatedly acknowledged that they were given sufficient time to read and

understand the DRA and DR Policy and were encouraged to ask any questions they had

regarding the same.  (Specht Decl. Exs. C-E; Suppl. Specht Decl., Exs. A pp. 3, 26, B, C and D;

Stoler Decl., Ex. G).  None of the Individual Respondents allege that they ever sought

clarification regarding whether the DRA or DR Policy permitted them to proceed in arbitration

on a class/collective basis and their failure to do so does not protect them from having to proceed

in arbitration on an individual basis.  See Gold, 365 F.3d at 149; Nardi, 824 N.Y.S.2d 764

(same); Baldeo, 2005 WL 44703, at *4.[12]

## CONCLUSION

For all the foregoing reasons, Petitioners respectfully request that the Court issue an order

vacating the award and compelling Individual Respondents to individually arbitrate their claims.

Dated:  New York, New York
        March 7, 2012

                                       Respectfully submitted,

                                       SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                                       By:_____

                                            Jonathan Stoler
                                          Eric Raphan
                                          30 Rockefeller Plaza
                                          New York, New York  10112
                                          Tel.:  (212) 653-8700
                                          Fax:  (212) 653-8701
                                          *Attorneys for Petitioners*

---

[12] The Arbitrator also seems to focus on the fact that the DRA and DR Policy were contracts of adhesion.  (Award p. 9).  However, this fact is completely irrelevant.  As the Supreme Court made clear in Concepcion, a party may be compelled to individually arbitrate their claims even if the arbitration agreement was a contract of adhesion. Concepcion, 131 S. Ct. at 1753-1754.  Indeed, numerous courts have compelled individuals to arbitrate their employment-related claims pursuant to an arbitration provision in the employer's handbook or in a written agreement that was provided to the employee as a "condition of employment."  See Brown v. St. Paul Travelers Companies, Inc., 559 F. Supp. 2d 288, 290-91 (W.D.N.Y. 2008), aff'd, 331 Fed.Appx. 68 (2d Cir. 2009); Gonzalez v. Toscorp Inc., No. 97 Civ. 8158 (LAP), 1999 WL 595632, at *2 (S.D.N.Y. Aug. 5, 1999).