UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

RAME, LLC d/b/a CAFÉ CENTRO, and
PATINA RESTAURANT GROUP, LLC,

                    Petitioners,

    - against -

MISHI POPOVICH, SANDRA AGUILERA,
BRENDAN CASEY, JOHAN MESTANZA, DAVID
HEWETSON, SAMUEL CUEVAS, and BONNIE
WICKARD, on behalf of themselves and all
Others similarly situated,

                    Respondents.

------------------------------------------X

12 Civ. 1684

OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/9/12

A P P E A R A N C E S:

        Attorneys for Petitioners

        SHEPPARD MULLIN, RICHTER & HAMPTON, LLP
        30 Rockefeller Plaza, 24th Floor
        New York, NY 10112
        By:  Jonathan Stoler, Esq.
              Eric David Raphan, Esq.

        Attorneys for Respondents
        BERKE-WEISS & PECHMAN LLP
        488 Madison Avenue, 11th Floor
        New York, NY 10022
        By:  Jessica N. Tischler, Esq.
              Louis Pechman, Esq.
              Nahir Marely Mercado, Esq.

**Sweet, D.J.**


          Petitioners Rame, LLC d/b/a Café Centro and Patina

Restaurant Group (collectively, the "Petitioners") have filed a

petition to (1) vacate arbitrator Bonnie Weinstock's (the

"Arbitrator") Partial Final Award on Clause Construction, dated

February 6, 2012 (the "Award"), pursuant to 9 U.S.C. § 10, and

(2) remand the matter to the Arbitrator, directing her to

proceed with each respondents' claims in separate arbitrations

on an individual basis.  In her Award, the Arbitrator ruled that

the arbitration agreement (the "Agreement") between the

Petitioners and the respondents Mishi Popovich ("Popovich"),

Sandra Aguilera ("Aguilera"), Brendan Casey ("Casey"), Johan

Mestanza ("Mestanza"), David Hewetson ("Hewetson"), Samuel

Cuevas ("Cuevas") and Bonnie Wickeraad ("Wickeraad")

(collectively, the "Respondents") permits collective proceedings

in arbitration.  Upon the facts and conclusions set forth below,

the petition to vacate is denied.


## I. Prior Proceedings


          Respondents filed a complaint against Petitioners in

Popovich, et al. v. Rame, LLC d/b/a Café Centro, et ano, 11 Civ.

680 (LBS) on January 31, 2011, which asserted class and

collective action claims for unpaid wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and under the New York Labor Law ("NYLL"), § 190 et seq.  On May 20, 2011, the Petitioners filed a motion to dismiss and compel arbitration, alleging that, under the Agreement, the Respondents were required to arbitrate their claims.  In response to the motion to compel arbitration, on July 1, 2011, the Respondents voluntarily dismissed, without prejudice, the complaint and commenced arbitration.

Pursuant to the parties' joint stipulation, dated September 23, 2011, the parties agreed to and selected the Arbitrator.  They also agreed to engage in motion practice to obtain a threshold clause construction award from the Arbitrator on whether the Respondents' claims could be brought in arbitration on a class or collective action basis.[1]  After several rounds of briefing, on February 6, 2012, the Arbitrator issued the Award, permitting the Respondents to pursue their

---

[1] More specifically, the Agreement states, in pertinent part:

"Construction of the Arbitration Clause

Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award").  The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award."

claims on a class-wide or collective action basis.   The
Arbitrator stayed its decision to permit the parties to seek
judicial review and the Petitioners filed an application to
vacate the Award.

The instant motion was heard and marked fully
submitted on April 11, 2012.

## II.  The Facts

The facts are set forth in the Award, the complaint
and the declarations submitted by the parties and are not in
dispute except as noted below.

Café Centro is a restaurant located at 200 Park
Avenue, New York, New York.  Patina is a corporate parent of
Café Centro.  The Respondents are individuals who were former
employees at Café Centro, who worked as a waiter, waitress,
bartender, food runner and busser at various times from 1995 to
June 2010 in periods ranging from nine months to more than seven
years.

Beginning in November 2007, Café Centro's management
distributed a new Hourly Team Member Handbook (the "Handbook")

and a copy of a Dispute Resolution Agreement (the "DRA") to the restaurant's hourly employees for their review and execution.

In connection with the distribution of the Handbook, in November 2007, Café Centro's management conducted a series of mandatory staff meetings with its hourly employees.  Each employee was required to attend at least one of these meetings.

The Handbook contains a Dispute Resolution Policy (the "DR Policy"), which provides that all claims relating to an individual hourly employee's employment must be submitted to final and binding arbitration.  More specifically, the DR Policy provides, in pertinent part:

> By accepting or continuing your employment with the Company, you will be agreeing that both you and the Company will resolve by mediation and final and binding arbitration any claim that would otherwise be resolved in a court of law.  The claims governed by this agreement are those that you or the Company may have relating to your employment with, behavior during, or termination from the Company. Claims for workers' compensation or unemployment compensation benefits are not subject to this agreement. . .  The arbitrator will decide all claims according to law, may award all damages and relief allowed by law, and will make an award with a written opinion with findings of facts and conclusions of law.

Similar to the DR Policy, the DRA requires that all claims relating to an individual's employment be submitted to

final and binding arbitration.   Specifically, the DRA provides

in pertinent part that:

> . . . The claims governed by this agreement are those
> that you or the Company may have relating to your
> employment with, behavior during or termination from,
> the Company. Claims for workers' compensation or
> unemployment compensation benefits are not subject to
> this agreement.
>
> By accepting or continuing employment with the
> Company, you and the Company both agree to resolve
> such claims through final and binding arbitration.
> This includes, but is not limited to, claims of
> employment discrimination because of race, sex,
> religion, national origin, color, age, disability,
> medical condition, marital status, gender identity,
> sexual preference or any sexual harassment and
> unlawful retaliation; any claims under contract or
> tort law; any claim for wages, compensation or
> benefits; and any claim for trade secret violations,
> unlawful competition or breach of fiduciary duty.
>
> . . . You and the Company agree that the dispute will
> be resolved by final and binding arbitration . . . The
> arbitrator may award any remedy or relief as a court
> could award on the same claim.

Notably, the DR Policy and the DRA are devoid of any reference

to arbitration on a class-wide or collective basis.


       The Respondents have admitted that they received the

Handbook containing the DR Policy, which they read and

understood.   In addition, Aguilera, Hewetson, Cuevas and

Wickeraad each commenced their employment at Cafe Centro after

November 2007 and, thus, signed a DRA when they began their

employment at Cafe Centro.  They also signed an Employment

Acknowledgement and Agreement (the "Acknowledgment") that

provides, in pertinent part:

> I acknowledge that I have received a copy of the
> Company's Handbook and understand that it contains
> important information on the Company's general
> policies.  I acknowledge that I am expected to read,
> understand, and adhere to company policies and will
> familiarize myself with the material in the Handbook.
> Team Member understands and acknowledges that this
> Agreement is subject to the terms and conditions of
> the Dispute Resolution provisions contained in the
> Team Member Handbook and Dispute Resolution Agreement.
>
> Your signature below acknowledges that you have been
> given sufficient time to read and understand this
> document and that you agree to comply with the
> standards herein.

Both Hewetson and Popovich admit that, upon receipt of the DR

Policy and DRA, they had a general understanding as to the

purpose of these documents and asked certain questions regarding

the policies.  None of the Respondents, however, allege that

they asked whether the DRA and DR Policy permitted class or

collective proceedings.

### III. The Standard For Vacatur Under the FAA

In enacting the Federal Arbitration Act, 9 U.S.C. § 1

et seq. ("FAA"), Congress intended to place arbitration

7

agreements on equal footing with other contracts and establish a strong federal policy in favor of arbitration.  See AT&T Mobility LLC v. Concepcion, -- U.S. ---, 131 S. Ct. 1740, 1745, 179 L. Ed. 2d 742 (2011); Perry v. Thomas, 482 U.S. 483, 489, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987).  Thus, the FAA requires courts to "rigorously enforce agreements to arbitrate." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985) (citation omitted).

Under Section 9 of the FAA, "a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11."  Id. (quoting 9 U.S.C. § 9). The FAA supplies a "streamlined" mechanism for a party seeking "a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it."  Hall St. Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 582, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008).

Section 10(a)(4) of the FAA, which the Petitioners invoke in seeking to vacate the Award, provides grounds for vacatur where, among other reasons, "the arbitrators exceed their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made."

8

9 U.S.C. § 10(a)(4).

The Second Circuit has "consistently accorded the narrowest of readings to [§ 10(a)(4)], in order to facilitate the purpose underlying arbitration:  to provide parties with efficient dispute resolution, thereby obviating the need for protracted litigation."  ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co., 564 F.3d 81, 85 (2d Cir. 2009).  This is "especially" true when Section 10(a)(4) is invoked to challenge an award deciding "a question which all concede to have been properly submitted in the first instance."  DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 824 (2d Cir. 1997) (quoting Fahnestock & Co. v. Waltman, 935 F.2d 512, 515 (2d Cir. 1991)).

In addition, "[i]f the parties agreed to submit an issue for arbitration, we will uphold a challenged award as long as the arbitrator offers a barely colorable justification for the outcome reached."  ReliaStar, 564 F.3d at 86 (internal quotation marks omitted).  "In other words, 'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of this authority,' a court's conviction that the arbitrator has 'committed serious error' in resolving the disputed issue 'does not suffice to overturn his decision.'"  Id. (quoting United Paperworkers Int'l Union AFL-

CIO v. Misco, Inc., 484 U.S. 29, 39, 108 S. Ct. 364, 98 L. Ed.
2d 286 (1987)).

Put simply, a party contending that the decision of
the arbitration panel must be vacated bears a heavy burden and
"must clear a high hurdle . . . in order to obtain that relief."
Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., -- U.S. ---, 130
S. Ct. 1758, 1767, 176 L. Ed. 2d 605 (2010).   "It is not enough
for petitioners to show that the panel committed an error - or
even a serious error.  It is only when [an] arbitrator strays
from interpretation and application of the agreement and
effectively 'dispense[s] his own brand of industrial justice'
that his decision may be unenforceable."  Id. (citations
omitted).

Thus, in considering a Section 10(b)(4) challenge,
"[t]he principal question for the reviewing court is whether the
arbitrator's award draws its essence" from the agreement to
arbitrate.  ReliaStar, 564 F.3d at 86 (quoting 187 Concourse
Assocs. V. Fishman, 399 F.3d 524, 527 (2d Cir. 2005)).  "If the
answer to this question is yes, . . . the scope of the court's
review of the award itself is limited."  Id. at 85-86.   The
court does not consider "whether the arbitrators correctly
decided [the] issue."  Banco de Seguros del Estado v. Mut.

10

Marine Office, Inc., 344 F.3d, 255, 262 (2d Cir. 2003).

Courts in this circuit have also vacated arbitration
awards that are in "manifest disregard of the law." See
Halligan v. Piper Jaffray, Inc., 148 F.3d 197, 202 (2d Cir.
1998). While the future of the "manifest disregard" standard is
unsettled, see Stolt-Nielsen, 130 S. Ct. at 1768 n.3 (stating
that the Supreme Court would "not decide whether 'manifest
disregard' survives") in this circuit, "manifest disregard" has
been reconceptualized as "a judicial gloss" on the FAA's
specific grounds for vacatur, and so interpreted, "remains a
valid ground for vacating arbitration awards." T. Co Metals,
LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 340 (2d Cir.
2010) (citation omitted).

"[A]wards are vacated on grounds of manifest disregard
only in those exceedingly rare instances where some egregious
impropriety on the part of the arbitrator is apparent." Id. at
339 (citation omitted). Such impropriety requires "more than
error or misunderstanding with respect to the law, or an
arguable difference regarding the meaning or applicability of
law urged upon an arbitrator." Id. (citation omitted). The two
part showing requires the court to consider, first, "whether the
governing law alleged to have been ignored by the arbitrator was

11

well defined, explicit, and clearly applicable," and, second, "whether the arbitrator knew about the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it." Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200, 209 (2d Cir. 2002).

## IV.   The Threshold Issue

Applying the above principles to this case, the Court considers first, whether the parties had submitted to the Arbitrator the question of whether the Agreement permitted class arbitration and, second, whether the Agreement or the law categorically prohibited the Arbitrator from resolving the threshold issue so that the Award should be vacated. See Jock v. Sterling Jewelers Inc., 646 F.3d 113, 122 (2d Cir. 2011).

Unable to agree upon the definition of the threshold legal issue, the parties proposed their respective versions to the Arbitrator to determine which was most appropriate. (Jt. Stip. ¶ 5).  The Petitioners submitted the threshold issue, as follows:  "May Claimants attempt to pursue a claim or claims in arbitration on behalf of others on a class-wide and/or collective bases where, as here, the DRA does not specifically refer to the terms 'class' or 'collective' arbitration and is

otherwise silent on the issue 'class' or 'collective'
arbitration."  (Id.)  The Respondents presented the threshold
issue, as follows:  "May the arbitration proceed on a collective
and/ or class action basis?"  (Id.)  The Arbitrator was to issue
her decision on the threshold question and issue the Award in
accordance with the terms of the Agreement and the American
Arbitration Association's ("AAA") Employment Arbitration Rules
and any related supplemental rules.  (Resp. Opp. at 3-4).

Rule 3 of the Supplemental Rules of the AAA states, in
pertinent part, that:

> Upon appointment, the arbitrator shall determine as a
> threshold matter, in a reasoned, partial final award
> on the construction of the arbitration clause, whether
> the applicable arbitration clause permits the
> arbitration to proceed on behalf of or against a
> class.

While the parties had minor language differences as to how to
frame the issue presented, both parties generally sought a
ruling as to whether the Agreement permitted the Respondents to
bring their claims on a collective or class basis.  Therefore,
the Arbitrator was considering an issue which the parties had
submitted for her consideration.

## V.    The Arbitrator Did Not Exceeded Her Authority

A court may properly find that an arbitrator exceeded
her authority if the arbitrator has "consider[ed] issues beyond
those the parties have submitted for her consideration" or
"reach[ed] issues clearly prohibited by law or by the terms of
the parties' agreement." Jock, 646 F.3d at 122.  The Second
Circuit has drawn a distinction between these two situations.
In the first, "the law or the parties' agreement categorically
prohibits the arbitrator from reaching an issue so that, in
reaching that issue, the arbitrator exceeds her authority." Id.
at 123 (citing Westerbeke, 304 F.3d at 220).  In the other, "the
parties grant the arbitrator the authority to determine an
issue, but the arbitrator makes an error of law in deciding that
issue." Westerbeke, 304 F.3d at 220.

Here, the Respondents contend that neither situation
applies.  They argue that the Arbitrator did not exceed her
authority, because the issue of whether a collection action
could proceed "was squarely presented to the Arbitrator" and
that the Agreement itself contained language that "the
arbitrator will decide all claims according to law, may award
all damages and relief allowed by law," and that "[t]he
arbitration may award any remedy or relief as a court could

14

award on the same claim." (Resp. Opp. at 4-5). Thus, the
Arbitrator was granted the authority to determine the issue and
no error of law was made.

In contrast, the Petitioners argue that the Arbitrator
exceeded her authority under the parties' DRA and DR Policy.
(Pet. Memo at 9). More specifically, they argue that "the Award
fails to adhere to well-settled Supreme Court precedent and
basic New York contract interpretation principles all of which
clearly provide that neither the DRA nor the DR Policy give the
Arbitrator the authority to preside over class/collective
claims." (Id.). Accordingly, the Petitioners urge the Court to
find that the Arbitrator exceeded her proper authority and to
vacate the Award.

The Decisions in Bazzle, Stolt-Nielsen and Jock

An examination of recent Supreme Court and Second
Circuit decisions, however, compels a contrary result. In
Stolt-Nielsen, the Court discussed, but left open, the ambiguity
created by Green Tree Financial Corp. v. Bazzle, 539 U.S. 444,
123 S. Ct. 2402, 156 L. Ed. 2d 414 (2003), in attempting to
resolve whether a court or an arbitrator should decide if an
arbitration agreement permits class arbitration when the

15

agreement does not contain express class arbitration language.
Stolt-Nielsen, 130 S. Ct. at 1771.  A four Justice plurality in
Bazzle determined that where the question is whether collective
arbitration is permissible, it is a procedural matter and thus
for an arbitrator.  Bazzle, 539 U.S. at 452.  Only in certain
limited "gateway matters, such as whether the parties have a
valid arbitration agreement at all or whether a concededly
binding arbitration clause applies to a certain type of
controversy," may a court make the decision.  Id.

        While "Stolt-Nielsen pointed out that Bazzle did not
have the same precedential value as an opinion by a majority of
the Court, it did not indicate that the plurality opinion in
Bazzle was incorrect on the issue of who decides whether a class
can arbitrate a dispute."  Guida v. Home Savings of Am., Inc.,
793 F. Supp. 2d 611, 616 (E.D.N.Y. 2011).  Thus, the Bazzle
plurality's holding remains persuasive and instructive.  See
Stolt-Nielsen, 130 S. Ct. at 1772 (stating that "the parties
appear to have believed that the judgment in Bazzle requires an
arbitrator, not a court, to decide whether a contract permits
class arbitration . . . In fact, however, only the plurality
decided that question.  But we need not revisit that question
here."); see also Vilches v. The Travelers Cos., 413 Fed. App'x
487, 492 (3rd Cir. 2011) (stating that "[w]here contractual

16

silence is implicated, the arbitrator and not a court should decide whether a contract was silent on the issue of class arbitration.") (internal quotations omitted); Guida, 793 F. Supp. 2d at 617 (concluding that the arbitration panel should decide whether or not the plaintiffs in this case can proceed on a class basis); Vasquez v. Servicemaster Global Holding, No. 09-5148, 2011 WL 2565574, at *3 (N.D. Cal. June 29, 2011) (noting that Stolt-Nielsen "clarified that the question remains open" but referred the class arbitration question to the arbitrator); Smith v. The Cheesecake Factory Restaurants, Inc., No. 06-829, 2010 WL 4789947, at *2 (M.D. Tenn. Nov. 16, 2010) (concluding that "whether the parties agreed to class arbitration is to be resolved by the arbitrator[,]" citing Stolt-Nielsen and Bazzle).

In Stolt-Nielsen, the Supreme Court addressed "whether imposing class arbitration on parties whose arbitration clauses are 'silent' on that issue is consistent with the [FAA]." Stolt-Nielsen, 130 S. Ct. at 1765.  The parties agreed to submit the class arbitration question to a panel of three arbitrators. Id.  Significantly, the parties also stipulated that the arbitration clause was "silent" with respect to permitting or prohibiting class arbitration.  Id. at 1766.  Respondent AnimalFeeds counsel explained "that the term 'silent' did not simply mean that the clause made no express reference to class

arbitration.  Rather, he said '[a]ll the parties agree that when a contract is silent on an issue there's been no agreement that has been reached on that issue.'"  Id.

In rejecting the arbitration panel's decision to arbitrate class as well as individual claims, the Court expressed concern that the panel "appears to have rested its decision on [a] public policy argument."  Id. at 1768; see Concepcion, 131 S. Ct. at 1750 (noting that in Stolt-Nielsen, "we held that an arbitration panel exceeded its power under § 10(a)(4) of the FAA by imposing class procedures based on policy judgments rather than the arbitration agreement itself or some background principle of contract law that would affect its interpretation.").

The Court also considered that "the differences between bilateral and class-action arbitration are too great for arbitrators to presume . . . that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings."  Id. at 1776. Thus, the Court held that an agreement to class arbitration cannot be inferred "solely from the fact of the parties' agreement to arbitrate," but that, under the FAA, class arbitration is only appropriate where "there is a contractual

18

basis for concluding that the party agreed to do so." Id. at 1775 (emphasis in original). The parties' agreement, however, could be implicit. Id.

In its discussion of Stolt-Nielsen, the Second Circuit in Jock highlighted the "Court's interpretation of the parties' 'silence' [as] key." Jock, 646 F.3d at 120. The Jock majority found significant that the parties had stipulated that the agreement was silent, not only in the sense that the contract made no reference to class arbitration, but also that the silence meant the parties had "not reached any agreement on the issue of class arbitration." Id. (citing Stolt-Nielsen, 130 S. Ct. at 1768). Thus, the "parties were in complete agreement regarding their intent," that "there was no express or implicit intent to submit to class arbitration." Id.

In contrast, the dissent in Jock believed that "silence" in Stolt-Nielsen "was interpreted as 'simply reflect[ing] the fact [that] each party recognized the arbitration clause neither specifically authorized nor specifically prohibited class arbitration.'" Id. The majority disagreed, stating that "[t]he dissent, however, fails to acknowledge that although that is the interpretation that the Respondents in Stolt-Nielsen wished the Court to adopt, that is

19

not the interpretation that the Court did adopt." Id. (emphasis
in original).  The Jock majority also noted that the Supreme
Court "declined to hold that an arbitration agreement must
expressly state that the parties agree to class arbitration."
Id. (emphasis in original).


        Like the agreement in Stolt-Nielsen, the arbitration
agreement in Jock contained no mention of class arbitration and
was "silent" as to that issue.  Id. at 123.  Unlike the parties
in Stolt-Nielsen, however, the parties in Jock did not enter
into a stipulation that their agreement was "silent" as to the
class arbitration issue and submitted that question to the
arbitrator.  Id. (stating that "[t]he plaintiffs' concession
that there was no explicit agreement to permit class
arbitration, however, is not the same thing as stipulating that
the parties had reached no agreement on the issue.").  The Court
found that the lack of an express agreement to permit or
prohibit class arbitration did not preclude an implicit
agreement to authorize class-action arbitration.  Id. (emphasis
added).


        The Second Circuit noted that the language of the
agreement in Jock was broader than the agreement in Stolt-
Nielsen.  The arbitration clause in Stolt-Nielsen "merely stated

                              20

that the arbitration clause would be applicable to '[a]ny dispute arising from the making, performance or termination of this Charter Party.'" Id. at 126 (quoting Stolt-Nielsen, 130 S. Ct. at 1765). In contrast, the clause in Jock explicitly granted the arbitrator the "power to award any types of legal or equitable relief that would be available in a court of competent jurisdiction." Id. The Court stated that:

> [i]t is clear from the terms of the arbitration agreement that Sterling required its employees to sign that the parties intended to make available in arbitration all remedies and rights that would otherwise be available in court or before a government agency. It was not unreasonable, and clearly not manifestly wrong, for the arbitrator to construe this to mean that the parties also intended to include the right to proceed as a class and seek class remedies.

Id. at 127. Thus, there was an implicit agreement to allow for class arbitration. For the Court, the issue, therefore, was not "whether the arbitrator was right or wrong in her analysis," but the appropriate level of deference given to her by the court. Id. (stating that the arbitration "had the authority to make the decision, and the parties to the arbitration are bound by it.").

The Petitioners' Interpretation of the Applicable Precedent is Unpersuasive

To support their position, the Petitioners contend

21

that post-Stolt-Nielsen, "a party may not be compelled under the
FAA to submit to class arbitration unless there is a contractual
basis for concluding that the party agreed to do so."  130 S.
Ct. at 1775 (emphasis in original).  Based upon these
principles, which the Petitioners argue are equally applicable
here, they state that the Supreme Court rejected an arbitration
panel's presumption that "the parties' mere silence on the issue
of class-action arbitration constitutes consent to resolve their
disputes in class proceedings."  Id. at 1776.


        The Petitioners contend that "[i]t is undisputed that
neither the DRA nor the DR Policy make any reference whatsoever
to 'class' or 'collective' actions" and that the Respondents
have admitted to as much.  (Pet. Memo at 11).  In the
Petitioners' view, the Award "essentially creates a new
requirement that is not supported by any case law; namely, that
employers must include an affirmative class-action wavier in
their arbitration agreements in order for employees to be deemed
to have waived their ability to proceed on a class/collective
action basis."  (Pet. Memo at 9).  In addition, Petitioners
contend that in light of Stolt-Nielsen, the Arbitrator was
required to abide by, but failed to even consider, New York law
on contract interpretation.  (Pet. Reply at 4).

The Petitioners' interpretation, however, fails to consider the treatment of Stolt-Nielsen by the Second Circuit in Jock. First, the Petitioners adopt an interpretation of "silence," which the Jock dissent advocated for, but was explicitly rejected by the majority. Post-Jock, "silence" cannot be interpreted to mean that there was no specific authorization or prohibition of class arbitration in the agreement. See Stolt-Nielsen, 130 S. Ct. at 1766. Instead, the parties must be in agreement regarding their intent and also stipulate that there was "no explicit or implicit intent to submit to class arbitration." Jock, 646 F.3d at 120.

Here, neither party expressly contemplated the issue of class arbitration nor is there a Stolt-Nielsen-like stipulation on the matter. Stolt-Nielsen "reaffirmed the basic precept of the FAA, that 'arbitration is a matter of consent, not coercion'" and that "courts and arbitrators must 'give effect to the contractual rights and expectations of the parties.'" Id. at 127 (citing Stolt-Nielsen, 130 S. Ct. at 1773-74). Thus, while the DR Policy and the DRA made no reference to class arbitration, which the Petitioner repeatedly state in their briefs, more significantly, there was no evidence of any agreement as to that issue. Without such an agreement as to the parties' intent, and "where that agreement contains what

23

is argued to be an implicit agreement to submit to class arbitration," the Arbitrator was free to "look to state law principles of contract interpretation in order to divine whether such intent exists." Id. at 126.

As emphasized in the Award, the Arbitrator did not predicate her decision "upon any alleged silence in the DR Policy or the DRA regarding class actions." (Award at 10). "Rather, it is based on what is stated in the DR Policy, namely, that an employee can bring "all claims" arising out of his/ her employment (except workers' compensation or unemployment claims) and that the Arbitrator 'will decide all claims according to law, [and] may award all damages and relief allowed by law. . . ." (Id.) (emphasis added in original). Thus, like in Jock, the Arbitrator here examined the terms of the arbitration agreement and found "the presence of a very broadly worded arbitration provision." (Id.) The Arbitrator found no mutual waiver in the Agreement and reasoned that "[s]ince class action relief is clearly allowed under the New York Labor Law and collective action relief is authorized under the FLSA, . . . the DR Policy and the DRA permit a claim to proceed as a class or collective action." (Id. at 11).

In addition, to argue against the Award, the

24

Petitioners now rehash several arguments that they previously
presented to the Arbitrator.  Having found that the parties
agreed to submit the class arbitration issue to the Arbitrator,
this Court's review of these arguments is limited.  See
Reliastar, 564 F.3d at 86.  Under the standard for vacatur under
the FAA, the Award will stand "as long as the arbitrator offers
a barely colorable justification for the outcome reached."  Id.
Petitioners' "must clear a high hurdle" that shows more than
that "error – or even serious error" by the Arbitrator, but that
she "dispense[d her] own brand of industrial justice."  Stolt-
Nielsen, 130 S. Ct. at 1767.

        Here, the Petitioners contend that the Arbitrator
misinterprets the DRA and DR Policy phrase "any claim" and the
provision that the Arbitrator "may award all damages and relief
allowed by law" to support her Award.  (Pet. Memo at 12-17).
Petitioners argue that the "Arbitrator's reliance on this
language is misplaced because, when read within the context of
the DRA and the DR Policy, the phrase "any claim" clearly refers
to substantive claims and not matters of procedure."  (Id. at
12).  In addition, the Petitioners assert that the Arbitrator
"incorrectly reasons that Individual Respondents have a
'statutory right' to seek 'relief' on a class or collective
basis under the NYLL and FLSA" based on the "all damages and

relief" language.  (Id. at 15 (citing Award at 13-14, 18-19)).

        In the Award, the Arbitrator specifically addressed
both of the Petitioners' arguments.  First, as to the
Petitioners' contention that "any claim" refers only to
substantive claims, the Arbitrator addressed and found that
argument to be "disingenuous," stating that "when procedural
matters are inextricably intertwined with the merits of a case,
the artificial distinctions between procedural and substantive
claims must take a back seat to the larger question whether the
parties agreed to arbitration these claims."  (Award at 24-25).
In addition, she noted that the arbitration agreement was
sufficiently "broadly worded," a distinction made by the Second
Circuit in Jock, to empower the arbitrator to "award all damages
and relief allowed by law."  (Id. at 23).  In her judgment, the
language of the DRA and the DR Policy "contemplate the
Arbitrator having broad authority to afford the full range of
remedies available at law," which in turn "[t]he Arbitrator
construes that to include the right to file claims on behalf of
a class."  (Id. at 20-21).

        The Arbitrator also noted that "the case law in this
jurisdiction holds that a class or collective action waiver
should be found only when it is clear that such a waiver was the

26

mutual intent of both parties or, at minimum, the intent of the
drafter." (Id. at 21). Having found "no such clear, knowing
waiver present in this case[,]" the Arbitrator declined to
follow, as the Petitioners urged then and now, the holding in
LaVoice v. UBS Financial Servs, Inc., No. 11-2308(BSJ)(JLC),
2012 WL 124590 (S.D.N.Y. Jan. 13, 2012).

     In LaVoice, the plaintiff commenced a class and
collective action in the Southern District of New York alleging
that the defendant UBS had violated the FLSA and NYLL. Id. at
*1. UBS filed a motion to compel on the grounds that the
plaintiff was a party to an arbitration agreement with UBS
pursuant to which he agreed to individually arbitrate his FLSA
and NYLL claims. Id. Like the Respondents here, the plaintiff
countered that the right to proceed on a collective basis under
the FLSA is a federal statutory right that cannot be waived, and
thus the parties' arbitration agreement was unenforceable. Id.
at *6. The Court rejected the plaintiff's argument as being
precluded by the Supreme Court's decision in Concepcion. Id.

     Notably, the LaVoice decision declined to follow this
Court's holding in Raniere v. Citigroup Inc., 827 F. Supp. 2d
294 (S.D.N.Y. 2011), which held that the right to proceed
collectively under the FLSA cannot be waived. In Raniere, this

Court invalidated an arbitration agreement attached to an employee handbook that required individual arbitration of employment-related claims, stating that:

> There are good reasons to hold that a waiver of the right to proceed collectively under the FLSA is per se unenforceable- and different in kind from waivers of the right to proceed as a class under Rule 23. Collective actions under the FLSA are a unique animal. Unlike employment-discrimination class suits under Title VII of the Americans with Disabilities Act that are governed by Rule 23, Congress created a unique form of collective actions for minimum-wage and overtime pay claims brought under the FLSA.

Id. at 311.  Accordingly, this Court cannot find, as the Petitioners contend, that the Respondents do not have statutory right to proceed as a class under the FLSA.

In addition, the Arbitrator considered both cases, disagreed with LaVoice's holding, and found that the case to be distinguishable from the instant facts.  (Award at 21).  The dispute resolution clauses in LaVoice and Raniere "clearly apprised the signatories that they could not bring any class or collective claims" through the explicit class action waiver.[2]

---

[2] The Arbitrator noted that, "[o]f critical importance, the arbitration agreement in LaVoice stated, "By agreeing to the terms of this Compensation Plan . . . you waive any right to commence, be a party to or an actual or putative class member of any class or collective action arising out of or relating to your employment with UBS . . . ."

(Award at 21).

(Id.).  Absent an explicit class action waiver, the Arbitrator
reasoned that the employees "had no way of knowing that the DR
Policy would be construed by the Respondents to preclude class
or collective actions."  (Id.).

The Arbitrator's reasoning does not, contrary to the
Petitioners' assertion, require "the DRA and DR Policy to have
an express waiver of class/ collective claims proceedings."
(Pet. Memo at 17).  Instead, the Arbitrator first discussed In
re American Express Merchants' Litig., in which the Second
Circuit concluded that a class action waiver was unenforceable
because the plaintiffs had demonstrated that they otherwise
would not be able to vindicate their statutory rights "in either
an individual or collective capacity."  554 F.3d 300, 314 (2d
Cir. 2009) (emphasis in original).  The Court reasoned that due
to the great expense of pursuing the litigation and the small
individual recovery each plaintiff could expect, the waiver
would have the practical effect of ensuring that no claims would
be brought at all, granting the defendant "de facto immunity
from  . . . liability."  Id. at 320.

---

In addition, the binding arbitration clause in Raniere stated, "The Policy
makes arbitration the required and exclusive forum for the resolution of all
disputes . . . Claims covered under this Policy must be brought on an
individual basis.  Neither Citi nor any employee may submit a class,
collective, or representative action for resolution under this Policy."

827 F. Supp. 2d at 304.

After the Supreme Court vacated the decision and remanded it for reconsideration in light of Stolt-Nielsen, the Circuit again found that the arbitration provision was unenforceable because "the class action waiver in this case precludes plaintiffs from enforcing their statutory rights" due to the prohibitive cost of litigating on an individual basis. American Express Co. v. Italian Colors Rest., 634 F.3d 187, 197-99 (2d. Cir. 2011) ("AMEX II").   Shortly after the AMEX II decision, the case was remanded again in light of the Supreme Court decision in Concepcion.   Again, the Circuit held that such a class action waiver was unenforceable as it effectively deprived "plaintiffs of the statutory protections of the antitrust law."   In re American Express Merchants' Litig., 667 F.3d 204, 217 (2d Cir. 2012), pet. for reh'g en banc denied ("AMEX III").

As explained in the Award, the Arbitrator found "the Second Circuit's reasoning in all three AMEX cases to be significant to the instant dispute." (Award at 18).   Similar to the AMEX plaintiffs, who sought to enforce their statutory rights under the antitrust statutes, the Respondents here "seek to enforce their statutory rights under the FLSA and NYLL."

30

(Id. at 19).  Applying this Court's decision in Raniere,[3] the
Arbitrator found it "even more compelling to conclude in the
instant case that a class action waiver in an FLSA and NYLL case
should not be construed from a dispute resolution clause that
does not expressly contain such a waiver, nor does the clause
contain language from which such a waiver logically would be
inferred."  (Id. at 20).  Thus, the Arbitrator did not require
the DRA and DR Policy to have an express waiver, but stated that
those Agreements and supporting case law analysis "contemplate
the Arbitrator having broad authority to afford the full range
of remedies available at law. . .  includ[ing] the right to file
claims on behalf of a class."  (Id. at 20-21).

        For the reasons stated above, the Arbitrator did not
exceed her powers.


## VI.  The Arbitrator Did Not Act in Manifest Disregard of the Law

        A court's review under the doctrine of manifest
disregard is "severely limited."  Gov't of India v. Cargill

---

[3] The Arbitrator also cited to Sutherland v. Ernst & Young LLP, in which the
Court declined to grant reconsideration of its prior order which refused to
compel arbitration where the arbitration agreement contained a class action
waiver.  768 F. Supp. 2d 547 (S.D.N.Y. 2011).  In denying reconsideration,
the Court reaffirmed its decision that an employee with an FLSA claim of
unpaid overtime wages would be denied an opportunity to vindicate her
statutory rights if the class action waiver were enforced.  See Sutherland v.
Ernst & Young, -- F. Supp. 2d ---, 2012 WL 130420 (S.D.N.Y. Jan. 17, 2012).

Inc., 867 F.2d 130, 133 (2d Cir. 1989).  "It is highly
deferential to the arbitral award and obtaining judicial relief
for arbitrators' manifest disregard of the law is rare."
Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333
F.3d 383, 389 (2d Cir. 2003).  Thus, an arbitral award may be
vacated for manifest disregard of the law only where "the
arbitrator knew of the relevant [legal] principle, appreciated
that this principle controlled the outcome of the disputed
issue, and nonetheless willfully flouted the governing law by
refusing to apply it."  Westerbeke, 304 F.2d at 217.

        The Petitioners argue that "the Arbitrator ignored a
number of well-supported legal arguments all of which were
brought to the Arbitrator's attention prior to the issuance of
the Award and mandate that Individual Respondents be required to
proceed on an individual basis."  (Pet. Memo at 7).  The
Respondents reply that "[t]he law, and each of Petitioners'
legal arguments, most of which have been rehashed in
Petitioners' motion to vacate, were carefully considered and
addressed by Arbitrator Weinstock."  (Resp. Opp. at 6).

        As discussed above, the Arbitrator did not refuse or
ignore the relevant legal principles.  In fact, the record
suggests that the Arbitrator, only "[a]fter reviewing more than

32

eighty pages in legal memoranda, plus supporting documents" as
well as interpreting and distinguishing several cases, issued
the Award explaining why class action was not barred.  (Id.).
For example, in distinguishing Stolt-Nielsen, the Arbitrator
explained that "those facts are markedly different and fully
distinguishable from the facts of this case," and the Award went
on to analyze the language of the Agreement to provide further
support for the distinction between the cases.  See L'Objet, LLC
v. Samy D. Ltd., No. 11-3856(LBS), 2011 WL 4528297, at *3
(S.D.N.Y. Sept. 29, 2011) (finding no manifest disregard where
"[a]ll evidence indicates that the arbitrator provided a
carefully reasoned decision explaining why Dastar does not apply
to the facts of this case.").  While the Petitioners may
disagree with the Arbitrator's conclusion, that is an argument
on the merits and does not rise to one of the "exceedingly rare
instances where some egregious impropriety of the arbitrator is
apparent."  Duferco, 333 F.3d at 389.


        Moreover, even if the Award "were factually or legally
erroneous, such error would not constitute manifest disregard
for clearly applicable law."  Possehl, Inc. v. Shanghai Hia Xing
Shipping, No. 00-557(RWS), 2001 WL 214234, at *6 (S.D.N.Y. Mar.
1, 2001); see also L'Objet, 2011 WL 4528297, at *3 (quoting
Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l.,

Ltd., 888 F.2d 260, 265 (2d Cir. 1989)) (stating that "we are not at liberty to set aside an arbitrat[or's] award because of an arguable difference regarding the meaning and applicability of laws urged upon it.").

Accordingly, the Petitioner fails to demonstrated that the Award exhibits or that the Arbitrator acted in manifest disregard for the law.

## VII. Conclusion

In sum, the Arbitrator's 29 page Award was "based upon a careful analysis of the DRA and DR policy as required by the now growing body of case law on the issue of class action arbitrations." (Award at 11). The Arbitrator did not so stray from the "interpretation and application of the agreement" sufficient to have dispensed her "own brand of industrial justice" to exceed her powers nor exhibited a manifest disregard for the law. See Stolt-Nielsen, 130 S. Ct. at 1767. She demonstrated an understanding of, addressed and applied or distinguished where appropriate the relevant case law, including, among others, the Bazzle, Stolt-Nielsen, and Jock line of cases, to the question presented before her. Because there exists a more than colorable basis for the Award, the

34

Court finds the Petitioners have failed to meet their considerable burden.

Upon the facts and conclusions set forth above, the petition to vacate the Award is denied and the Award is confirmed.

It is so ordered.

New York, NY
July 7 , 2012

ROBERT W. SWEET
U.S.D.J.

35